CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

MAR 26 2012

JULIA C. DUDLEY, CLERK
BY: /s/ Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION No. 6:11CR00006-1 |
| v. | MEMORANDUM OPINION |
| RANDY WAYNE BRUFFY | JUDGE NORMAN K. MOON |

Defendant pleaded guilty to two counts of production of child pornography under 18 U.S.C. § 2251(a) and (e), and one count of possession of child pornography under 18 U.S.C. § 2252(a)(4)(B) and (b)(2). On March 16, 2012, I sentenced Defendant to a term of imprisonment of 276 months for each of the production counts and 120 months for the possession count, all such terms to run concurrently. The sentence I imposed falls within the United States Sentencing Guidelines ("U.S.S.G.") advisory guideline range of 262 to 327 months reached by applying a total offense level of 39 and a criminal history category of I. *See* United States Sentencing Commission, *Guidelines Manual*, Ch. 5, Pt. A, Sentencing Table (Nov. 2011).

However, before imposing that sentence, I first calculated Defendant's advisory guideline range by adding a five-level enhancement pursuant to U.S.S.G. § 4B1.5(b)(1), which resulted in a total offense level of 44[1] and an advisory guideline range of life (limited by a 70-

---

[1] The advisory guidelines range tops out at 43; a total "offense level of more than 43 is to be treated as an offense level of 43." U.S.S.G. Ch. 5, Pt. A, cmt. n. 2.

year statutory maximum sentence[2]). Thereafter, considering the nature and circumstances of the offenses and the history and characteristics of the Defendant pursuant to 18 U.S.C. § 3553(a)(1), I determined that a more appropriate sentence would be obtained were I to vary from the advisory guideline range produced by Defendant's total offense level of 44 and criminal history category of I; accordingly, I imposed a sentence within the guideline range applicable to an offense level of 39, which would have been Defendant's offense level had the five-level enhancement under § 4B1.5(b)(1) not applied.

At the sentencing hearing, I stated that I would issue a memorandum opinion explaining my reasons for the variance. Those reasons are set forth herein, and this memorandum will be incorporated into the judgment.

## I.

Defendant entered his guilty plea on September 6, 2011, and sentencing was originally scheduled for December 15, 2011. The probation office prepared a pre-sentence investigation report ("PSR"), which was originally dated November 9, 2011. The PSR was revised several times in the interim between entry of the plea and the eventual date of sentencing, which was continued several times at the parties' request. At sentencing, I used the most recently available PSR, which indicated that it had last been revised on February 22, 2012. Addenda to that report show that probation responded to two sets of objections submitted by the parties.

The first set of objections, submitted by both parties, were addressed by probation in an

---

[2] The maximum sentence for each production count is 30 years (for a total of 60 years), and the maximum sentence for the possession count is 10 years. Applying these sentences consecutively would result in a term of 70 years.

addendum to the PSR dated December 22, 2011. This addendum included a summary of the government's objection asserting "that Mr. Bruffy should qualify for treatment as a 'repeat and dangerous sex offender against minors' under U.S.S.G. § 4B1.5(b), [and] thus five points should be added to each grouping." Probation responded that,

> [p]ursuant to U.S.S.G. § 4B1.5(b)(1), in any case in which the defendant's instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct, the offense level shall be five plus the offense level determined under Chapters Two and Three. Therefore, the Chapter Four Enhancements section has been amended to reflect a five-point addition to the total offense level.

In response to this change (and other changes) to the PSR, Defendant submitted a second set of objections, which were addressed by probation in an addendum dated February 22, 2012. Regarding the enhancement under § 4B1.5(b)(1), probation summarized Defendant's objection as follows:

> Defense counsel objects to the application of the enhancement found in § 4B1.2 for repeat and dangerous offenders, stating that the enhancement provided under § 4B1.5(b)(1) for pattern of activity adds five levels for the exact same conduct that is covered by the five-level pattern of activity enhancement under § 2G2.2(b)(5). Although some courts have held that applying both of these enhancements does not necessarily constitute impermissible double counting, it is, in fact, enhancing the guidelines twice for the exact same conduct. This is inconsistent with the Congressional directive to the Sentencing Commission that resulted in the promulgation of § 4B1.5.

> Section 4B1.5 was added to the Guidelines pursuant to Amendment 615 in November of 2001. This was promulgated in response to Section 505 of the Protection of Children from Sexual Predators Act of 1998 (Pub. L. 105-314), which directed the Commission to review the Sentencing Guidelines on aggravated sexual abuse under 18 USC § 2243, coercion and enticement of a minor under 18 U.S.C. § 2422(b), contacted a minor under 18 U.S.C. § 2422(c), and transportation of minors and travel under 18 U.S.C. § 2423 and, upon completion of the review, promulgate amendments to the guidelines to increase the penalties applicable to these listed offenses in any case in which the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. Section 4B1.5 was the result of this review. However, Public Law 105-314 also contained a directive to the Sentencing Commission in Section 507

that with respect to any action taken, it should ensure reasonable consistency with other guidelines of the Federal Sentencing Guidelines and avoid duplicative punishment for substantially the same offense. Aside from the fact that the Congressional directive to the Sentencing Commission did not even reference 18 U.S.C. § 2251, in establishing § 4B1.5, the Commission completely ignored the Congressional directive to avoid duplicative punishment – i.e. double counting.

Since § 2G2.2(b)(5) and § 4B1.5(b)(1) give five-level enhancements for the exact same offense conduct, they constitute impermissible double counting in violation of the Congress' directive to the Commission. Mr. Bruffy should only be given one or the other of these enhancements. In the alternative, this double counting is grounds for a variance.

Further, as applied in Mr. Bruffy's case, § 4B1.5 provides the same sentencing guideline for a person like Mr. Bruffy with no prior convictions and for a person with a prior sex offense conviction. Clearly, the second type of offender represents a more aggravated case, and this enhancement does not adequately differentiate the two types of offenders. Accordingly, this disproportionate effect is grounds for the court to vary downwards from the guideline recommendation.

Probation responded that

[t]he defendant has met the requirements as set forth in the Sentencing Guidelines for application of these enhancements. By definition, he has committed a sex crime. Pursuant to U.S.S.G. § 4B1.5, application note 4(B)(i), addresses determination of a pattern of activity for purposes for subsection (b) by stating that if the defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor. The report remains unchanged regarding this matter.

The parties filed sentencing memoranda.[3] The government's memorandum, filed three days before the sentencing hearing, asserted for the first time that Defendant should be given (i) a two-level vulnerable victim enhancement under U.S.S.G. § 3A1.(b), and (ii) a two-level

---

[3] On December 1, 2011, I entered a pre-sentencing order (as I do in almost every criminal case), directing the parties to file a sentencing memorandum no fewer than five days before sentencing

if Defendant intends to make a sentencing recommendation to the Court below the median of the advisory Sentencing Guideline range as calculated in the presentence report, or if the United States intends to make a sentencing recommendation to the Court above said median, whether such a recommendation is in the form a specific sentence or general range of punishment. . . .

-4-

enhancement for sexual contact under § 2G2.1(b)(2)(A).[4, 5] At the sentencing hearing, I determined that these enhancements were applicable, and they were used to obtain Defendant's subtotal offense level prior to imposing any Chapter Four enhancements.

## II.

*A.*

Guideline § 4B1.5(b)(1) provides that, "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime . . . and the defendant engaged in a pattern of

---

[4] Defendant filed a response to the government's sentencing memorandum, complaining that these assertions essentially constitute untimely objections to the pre-sentence investigation report. Defendant's response also pointed out that the government's memorandum apparently diagnosed Defendant as a pedophile, even though there had been no psychiatric evaluation of Defendant, and that Defendant had not had timely access to Victim Impact Statements to which the government's memorandum had referred. At sentencing, the government apologized for its laxity regarding these matters, and I offered Defendant a continuance (to which the government agreed), but Defendant declined.

[5] The government's sentencing memorandum also advocated, in passing, a distribution enhancement pursuant to U.S.S.G. § 2G2.2(b)(3)(B), which probation had included in the offense level calculation. Defendant had objected to this enhancement on the ground that, although he had downloaded child pornography through a file-sharing network, he had only downloaded such images, and had never distributed or shared any images through such a network. The government's sentencing memorandum acknowledged that "investigators did not download any images from the defendant"; rather, Defendant "came to the attention of law enforcement around June 2010 because of his prolific activity on a peer-to-peer (file sharing) network," and "[i]nvestigators were able to recognize certain files by their hash value (akin to a digital fingerprint) and determined that some of the files depicted young children being sexually abused."
At sentencing, the government abandoned its pursuit of the § 2G2.2(b)(3)(B) enhancement, and I took the enhancement out of the offense level calculation. (Discussing the enhancements, I apparently stated, "We have taken out the production"; no one corrected this misstatement and, given the context, it was clear that I meant to say "distribution," not "production.") The government stated that its primary investigator in this case, who also performed the forensic analysis, "thinks it is possible that the defendant had shut off his file sharing capability," and the government acknowledged that *United States v. Layton*, 564 F.3d 330 (4th Cir. 2009), approving the imposition of a two-level distribution enhancement under § 2G2.2(b)(3)(F) based on the use of a peer-to-peer network, actually involved "some issue of knowledge." *Layton* held that, when "knowingly using a file-sharing program that allows others to access child pornography files, a defendant commits an act 'related to the transfer of material involving the sexual exploitation of a minor.'" 564 F.3d at 335 (quoting U.S.S.G. § 2G2.2 cmt. n. 1). Significantly, Layton had deliberately "created a shared folder . . . with privileges that allowed other people to download files that he put into the folder," and the Court found that, "[b]ecause Layton created and used a shared folder that he knew others could access to download his child pornography files, the district court properly applied a two-level sentencing enhancement for distribution for distribution under U.S.S.G. § 2G2.2(b)(3)(F)." *Id* (quotations, citation, and footnote omitted).

activity involving prohibited sexual conduct . . . [t]he offense level shall be 5 plus the offense level determined under Chapters Two and Three." "Pattern of activity" is defined as two or more separate incidents. *See* § 4B1.5, Application Note 4(B). A "covered sex crime" for purposes of this enhancement includes an offense perpetrated against a minor under Chapter 110, such as each of Defendant's convictions under 18 U.S.C. § 2251(a). *See* U.S.S.G. § 4B1.5, Application Note 2. The Commentary defines "prohibited sexual conduct" for application of §4B1.5(b), in part, as "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)" or the production of child pornography. *See* U.S.S.G. § 4B1.5, Application Note 4. Thus, the defendant's "pattern" of offenses involving the production of child pornography qualify as the requisite activity involving "prohibited sexual conduct."

Defendant admits that he engaged in prohibited sexual conduct with a minor on at least two occasions.[6] In light of these facts, the PSR properly calculated 5 points for this Chapter 4 enhancement, even though these acts also trigger the enhancement in §2G2.2(b)(5). The application of enhancements under both U.S.S.G. § 2G2.2(b)(5) and § 4B1.5(b)(1) does not constitute "impermissible" "double counting." The Fourth Circuit, in an unpublished opinion, has rejected this argument, finding that a district court had correctly determined that applying both enhancements was permitted because doing so was not expressly prohibited by the guidelines. *See United States v. Schellenberger*, 246 Fed. App'x. 830, 832 (4th Cir. 2007) (unpublished). The Court observed that the language in §4B1.5(b)(1) indicates that its five-level

---

[6] Although Defendant objects that U.S.S.G. § 4B1.5 does not differentiate between offenders who have a prior conviction and those who do not, the objection is of no consequence. Defendant's suggestion that he should receive a two-level enhancement, rather than five levels, is likewise unsupportable, given that, if Defendant had a prior conviction for production (or certain other conduct in federal or state court), he would face a mandatory life sentence under 18 U.S.C. § 3559(e) for the present production offenses.

enhancement "is to be added to the offense levels determined under Chapters Two and Three" and, therefore, "the guidelines intend the cumulative application of these enhancements." *Id.*[7]

B.

At sentencing, when finding Defendant's total offense level to be 44, I stated that, although the § 4B1.5(b)(1) enhancement applies, "there is a valid question as to impermissible double counting under the facts and circumstances of this case." I had also stated earlier in the hearing that, although "I think that [the] chapter four enhancement applies," I believed "that would involve double counting."

Those statements do not precisely reflect my concern about this matter.

My concern is not that applying both the § 4B1.5(b)(1) and § 2G2.2(b)(5) enhancements constitutes "*impermissible* double counting" (because, as I have already explained, it does not). I do indeed feel that, without the imposition of the § 4B1.5(b)(1) enhancement, the

---

[7] *See also United States v. Bastian*, 650 F. Supp. 2d 849, 869-70 (N.D. Iowa 2009) (acknowledging that the two provisions involve the same "pattern of activity," but explaining that the Sentencing Commission intended cumulative application of §§ 2G2.2(b)(5) and 4B1.5(b)(1), and that the sections concern "conceptually separate notions" in that "[t]he § 2G2.2(b)(5) enhancement is a specific offense characteristic for crimes involving child pornography" while "§ 4B1.5 was created to address recidivism concerns") (citing § 4B1.5 cmt.) *aff'd*, 603 F.3d 460 (8th Cir. 2010); *United States v. Wilson*, Criminal Action Nos. 1:07-cr-00219, 1:07-cr-00297, 2007 WL 3070361, *2 (E.D. Va. Oct. 19, 2007) (unpublished) ("even where a five level enhancement applies to one particular count under Section 2G2.2(b)(5), an additional five level enhancement may apply to the combined offense level under Section 4B1.5(b)(1)"); *United States v. Fred*, Criminal Action No. 1:05-cr-00801, 2008 WL 2229527, *9 (D. N.M. Feb. 8, 2008) (citing *Schellenberger* and also stating the court's belief "that there is some cumulative nature to what the Guidelines do, and that Congress intends the Guidelines to be cumulative for sex crimes against minor victims").

Similarly, in *United States v. Carter*, 292 Fed. App'x. 16, 20 (11th Cir. 2008) (unpublished) the Eleventh Circuit rejected a defendant's argument that application of both sections constituted impermissible double counting. First, the court reasoned that "the Sentencing Commission intended for Guidelines sections to apply cumulatively." *Id.* Second, the court relied on the specific language of the guidelines to hold that the two sections were not mutually exclusive, as § 4B1.5(b)(1) explicitly states that the enhancement "shall be 5 plus the offense level determined under Chapters Two and Three." *Id.* (quoting U.S.S.G. § 4B1.5(b)(1)). The Eleventh Circuit found this language to be indicative of the Sentencing Commission's intent, reasoning further that the two sections address different harms, and therefore no double counting occurs. *Id.* While § 2G2.2(b)(5) "addresses the fact that the offense itself involved a pattern of sexually exploiting minors," § 4B1.5(b)(1) "looks at the likelihood that the defendant will become a repeat offender and whether lengthy incarceration is therefore needed to protect the public." *Id.*

enhancements from which Defendant's subtotal offense level of 39 were derived sufficiently account for his offense conduct; however, there is nothing "impermissible" about the application of the § 4B1.5(b)(1) enhancement in this case. Accordingly, I found that Defendant's total offense level is 44, which includes the § 4B1.5(b)(1) enhancement.

Nonetheless, I concluded that, considering the factors listed in 18 U.S.C. § 3553(a), "I think it is appropriate not to consider [the § 4B1.5(b)(1) enhancement] in the sentence." I am statutorily bound to "impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth" in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a) (emphasis added). I have attempted here, using as my starting point the guideline range resulting from a total offense level of 44, to "make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38 (2007).

### C.

The PSR describes the offense conduct charged in the indictment. Count One addresses images taken of a minor female child. The images do not depict sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse. Because some of the images depict a "lascivious exhibition" of the child's genitals, the images meet the definition of child pornography. However, the images do not include images of the child's face; the child was asleep, unaware of the photographs being taken, and apparently suffered no physical or emotional harm; and the images were not distributed.

Count Two addresses a video taken of a minor male child. The first part of the video depicts the child taking a bath and later cuts to a brief section (probably less than a minute) showing the child's genital area. Although the portion of the video depicting the child in the bathtub is inappropriate, it is not child pornography. The portion of the video showing the

child's genital area meets the definition of child pornography because it depicts a "lascivious exhibition" of the child's genitals. However, this child also was unaware of the video camera and apparently has suffered no physical or emotional harm. Nor was the video distributed, nor does it appear to have been transferred from the video camera to any other media.

Count Three addresses the possession of 917 images of suspected child pornography and 127 videos of suspected child pornography. Defendant does not contest an enhancement under U.S.S.G. § 2G2.2(b)(7)(D), increasing the offense level by five levels because the offense involved 600 or more images, given that each video qualifies as 75 images and there are at least eight qualifying videos.[8]

### D.

These are serious offenses for which Defendant deserves to be punished. Nonetheless, I must consider the facts of the offenses in context. In my view, given the nature and circumstances of the offenses and the history and characteristics of the defendant, the sentence of 276 months, followed by a lifetime of supervised release, is sufficient to reflect the seriousness of the offenses and justly punish him. *See* 18 U.S.C. §§ 3553(a)(1) & (a)(2)(A). Defendant obviously merits a long incarceration, and he needs mental health treatment and counseling. However, he has no prior criminal history. He has a strong work and military history. He immediately cooperated in the investigation and provided authorities with the information necessary to further their investigation, in particular with regard to his conduct with the two children and their identities.

As for affording adequate deterrence to criminal conduct, *see* 18 U.S.C. § 3553(a)(2)(B),

---

[8] I stress that this court has certainly seen defendants with much larger collections of child pornography.

protecting the public from further crimes committed by Defendant, *see* 18 U.S.C. § 3553(a)(2)(C), and the concerns about recidivism that U.S.S.G. § 4B1.5 was created to address, *see* U.S.S.G. § 4B1.5 cmt., the sentence of 276 months is sufficient to deter Defendant and others from committing further crimes. As I have already mentioned, Defendant has no criminal record and has never been incarcerated before. He faced an absolute minimum sentence of 15 years, and I sentenced him well above that minimum. Although the offenses are serious, the production charges arose from crimes of opportunity, and given that Defendant's sentence of 276 months (23 years) of incarceration will be followed by a lifetime of supervised release, such opportunities are unlikely ever to arise again.[9]

In calculating the appropriate sentence for Defendant, I must also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.[10] *See* 18 U.S.C. § 3553(a)(6). Suffice it to say that my reasoning for the sentence imposed in this case is consistent with the reasoning for sentences imposed below the advisory guideline ranges in other child pornography cases before this court

---

[9] Defendant's term of incarceration will include sex offender treatment. On supervised release, Defendant will be registered as a sex offender, and will be subject to a rigid set of rules. He will not be allowed to associate with minor children except in the presence of responsible adults. He will have strict rules concerning his computer use, and will be subject to unannounced examination of any computer equipment.

I observe that Defendant's history of military service might suggest that he does well in structured situations, and he may do well under the rules and structure of supervised release. A 2010 study by the United States Sentencing Commission found that offenders who are in Criminal History Category I (as is Defendant) are very likely to successfully complete a term of supervised release, and that, in 2008, 81.3 percent of such Category I offenders successfully completed their term of supervision. *See* United States Sentencing Commission, *Federal Offenders Sentenced to Supervised Release*, at 66 (July 2010) (available at www.ussc.gov).

[10] I note that there is a wide spectrum of conduct that could comprise the offenses charged, and the conduct in this case, while serious, nevertheless falls toward the lower (but certainly not the lowest) end of the spectrum of cases seen before this court.

and across the country.[11]

### III.

This memorandum opinion is hereby incorporated into the judgment order in this case, entered this same day. The Clerk of the Court will forward a certified copy of this memorandum opinion and the accompanying judgment order to all counsel of record.

ENTERED: This 26th day of March, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[11] *See* United States Sentencing Commission, *Preliminary Quarterly Data Report, 4th Quarter Release, Preliminary Fiscal Year 2011 Data through October 31, 2011* (available at www.ussc.gov). In the fourth quarter of Fiscal Year 2011, district courts around the county sentenced below the advisory guideline range in approximately 50% of cases sentenced under U.S.S.G. § 2G2.1 and in well over fifty percent of cases sentenced under U.S.S.G. § 2G2.1. Of 218 cases sentenced under § 2G2.1, only 115 defendants received a sentence in the guideline range. *Id.* Of defendants receiving below guideline sentences, over half were not based on government sponsored motions. Even more strikingly, of 1,620 cases sentenced under § 2G2.2, only 534 defendants received a within guideline sentence. Sixty seven percent of defendants received sentences below the guideline range. Again, the vast majority of defendants receiving below guideline sentences received them as a result of consideration of the 18 U.S.C. § 3553(a) factors rather than as a result of government motion.

I also take exception to sentences received by state court defendants in the Western District of Virginia for far more aggravated crimes. A small sampling of such defendants follows: Kristal Henry, who received an active prison sentence of six years for two counts of sodomy of an 11-year old boy (Warren County Circuit Court); Augustin Olbera-Aguilera, who received a 20-year active sentence for two rape convictions of 10-year old and 12-year old girls on separate occasions (Clark County Circuit Court); and Dennis Erb, who received a total active sentence of 17 years and six months for aggravated sexual battery (sodomy) of his 12-year old grandson (Appomattox Circuit Court), Indecent Liberties with a child less than 15 years (Frederick County Circuit Court), and Aggravated Sexual Battery (Waynesboro Circuit Court). In my view, these state court offenses, and the harm thereby caused, are far more aggravated than the offenses and harm caused by the matter at hand.